## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| ROBERT WISZOWATY, JR., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:11-CV-7-PRC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Robert Wiszowaty, Jr. on January 3, 2011, and Plaintiff's Memorandum in Support of His Motion for Summary Judgment [DE 21], filed by Mr. Wiszowaty on May 10, 2011. Mr. Wiszowaty requests that the decision of the Administrative Law Judge denying him supplemental security income benefits be reversed or, alternatively, remanded for further proceedings. For the following reasons, the Court grants the request for remand.

## PROCEDURAL BACKGROUND

On October 11, 2007, Pamela Norton filed for supplemental security income ("SSI") benefits on behalf of Mr. Wiszowaty, who was a minor, for the month of October 2007 and the part of the month of November 2007 up to his eighteenth birthday. Mr. Wiszowaty's case was then reviewed for SSI as an adult from his eighteenth birthday in November 2007 forward. Mr. Wiszowaty's application was denied, as was his request for reconsideration. On September 23, 2009, Administrative Law Judge ("ALJ") Denise McDuffie Martin held an administrative hearing via video teleconference at which Mr. Wiszowaty, Mr. Wiszowaty's parents, and a vocational expert

testified.  On January 13, 2010, the ALJ issued a decision denying benefits.  The ALJ made the

following findings:

1.  The claimant was born on [ ], 1989, and was therefore in the "Adolescents (age 12 to attainment of age 18)" age group, the date the application was filed (e.g., 20 CFR 416.926a(g)(2)(v).  The claimant attained age 18 on [ ], 2007 (20 CFR 416.120(c)(4)).

2.  The claimant had not attained age 22 as of October 11, 2007, the alleged onset date, but attained age 18 on [ ], 2007 (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

3.  The claimant has not engaged in substantial gainful activity since October 11, 2007, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

4.  At all times relevant to this decision, the claimant has had the following severe impairments: a learning disability and mild mental retardation (20 CFR 404.1520(c) and 416.920(c)).

5.  At all times relevant to this decision, the claimant has not had an impairment or combination of impairments that meets, medically equals or functionally equals any of the impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6.  Because the claimant did not have an impairment or combination of impairments that met, medically equaled any listing, or functionally equaled the listings, the claimant was not disabled prior to attaining age 18 (20 CFR 416.924(a)).

7.  The claimant has not developed any new impairment or impairments since attaining age 18.

8.  Since attaining age 18, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 416.920(c)).  The claimant has a learning disorder and mild mental retardation.

9.  Since attaining age 18, the record shows that the claimant has not had an impairment or combination of impairments that meets or medically equals a listed impairment (20 CFR 416.920(d)).

10. After careful consideration of the entire record, I find that, since attaining age 18, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels.  He has the mental residual functional

capacity to perform unskilled work which involves only simple, repetitive, routine tasks; with one- to two-step instructions.

11.     The claimant has no past relevant work (20 CFR 416.965).

12.     The claimant is currently a "younger individual age 18-44" (20 CFR 416.963).

13.     The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

14.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

15.     Since attaining age 18, considering the claimant's age, education, work experience, and residual functional capacity, jobs have existed in significant numbers in the national economy that the claimant has been able to perform (20 CFR 416.960(c) and 416.966).

16.     The claimant was not under a disability, as defined in the Social Security Act, as a child, on or prior to [ ], 2007 (20 CFR 416.924(a)).

17.     The claimant has not been under a disability, as defined in the Social Security Act, from October 11, 2007, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(c) and 416.920(c)).

(AR 11-18).

On March 1, 2010, Mr. Wiszowaty filed a request for review, which the Appeals Council denied on October 29, 2010, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

Mr. Wiszowaty was born in 1989 and was 20 years old when the ALJ issued her decision. He had no past relevant work. Mr. Wiszowaty had received Child's Benefits from September 1, 1990, through June 2008 on the wage record of his father, and not because of Mr. Wiszowaty's own disability. The benefits ended when Mr. Wiszowaty was no longer a full-time student.

### A. Physical and Mental Health Background

From the time he was a baby until 2008, Mr. Wiszowaty lived exclusively with his mother, Pamela Norton; he then moved to Indiana to live in his father's home, where he now lives. During preschool, his teacher suggested that Mr. Wiszowaty had a learning disability. He never socialized with other children and was a loner, which concerned his teachers. His mother testified that during school testing "nothing was coming back normally." She also testified that Mr. Wiszowaty has always been very dependent.

On May 2, 2003, Ray Anglin, a licensed clinical psychologist for the Iroquois Special Education Association, evaluated Mr. Wiszowaty, who was 13 years old at the time. The report includes Mr. Wiszowaty's Kaufman Test of Educational Achievement scores. In Mathematics Applications, Mr. Wiszowaty scored a percentile rank of 0.2, and a grade equivalent of 1.2; in Mathematics Computation, Mr. Wiszowaty scored a percentile rank of 1, and a grade equivalent of 3.0; in Reading Decoding, Mr. Wiszowaty scored a percentile rank of 6, and a grade equivalent of 2.9; and in Reading Comprehension, Mr. Wiszowaty scored a percentile rank of 5 and a grade equivalent of 2.9. (AR 291). Mr. Anglin indicated that these scores were within expectations based on Mr. Wiszowaty's "previously established educational handicap of mental impairment." *Id*. Mr. Anglin reported that Mr. Wiszowaty's "task motivation for both easy and difficult tasks was

4

outstanding.  His persistence on difficult tasks was very good and he had no objection to spending time on a task–he did not 'hurry through' difficult tasks."  *Id.*

The lone treating doctor's report submitted by Mr. Wiszowaty was from Dr. Daniel Orozco of Riverside Neurology Associates in Kankakee, Illinois.  The report indicates that Mr. Wiszowaty was diagnosed with a seizure disorder based on an EEG, after presenting with complaints of "dizziness & syncope." (AR 344).

A Bradley-Bourbonnais Community High School Indivualized Education Plan ("IEP") from November 10, 2006, when Mr. Wiszowaty was in 10th grade, indicated a disability of "mentally impaired."  (AR 274).  The IEP details that Mr. Wiszowaty was enrolled in all special education courses, except for physical education.  The notes in the IEP show that Mr. Wiszowaty's PIAT (Peabody Individual Achievement Test) grade equivalents at that time were: Math 3.7, Reading Recognition 4.4, Reading Comprehension 6.8.  (AR 276).  The IEP also reports that he was uncomfortable in class and rarely spoke with his classmates, that he was sometimes rude to the para-professionals who ask him to complete assignments, and that he refused to discuss any reference to him being a sophomore or a later graduation date.  It was noted that "[t]he only activity he seems to enjoy is helping lower functioning students when he can work in a tutorial position."  *Id.*

An IEP Conference Report from Watseka Community High School in September 2007 lists Mr. Wiszowaty's primary disability as "mental retardation." (AR 292).  It proposes "supplementary aids" such as help with organization, refocusing to stay on task, monitoring when working in small/large groups, clarified and restated directions, extended time for testing, grading modifications, and requiring a staff member to read the content of the tests.  His special education teacher at Watseka, Jake Harms, reported that Mr. Wiszowaty had been in his class in 2003 and

2004, went to a different school, and then re-enrolled at Watseka in 2007. He indicated that Mr. Wiszowaty's math, reading, and written language were at a third grade instructional level in 2007, when he was in the 11th grade, and that he was placed in all special education classes, except for physical education.

On a scale of 1 - 5 ("1" indicating "no problem"), comparing Mr. Wiszowaty's functioning with that of same-age children without impairments, Mr. Harms rated Mr. Wiszowaty with a "2," which indicates "a slight problem" in the categories of comprehending oral instructions, understanding school and content vocabulary, understanding and participating in class discussions, paying attention when spoken to directly, focusing long enough to finish assigned activity or task, refocusing to task when necessary, carrying out single-step instructions, organizing own things or school materials, completing class/homework assignments, completing work accurately without careless mistakes, relating experiences and telling stories, using language appropriate to the situation and listener (written in: "never foul lang."), interpreting meaning of facial expression, body language, hints, sarcasm, and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation.

Mr. Harms rated Mr. Wiszowaty with a "3," which indicates "an obvious problem," in the categories of reading and comprehending written material, comprehending and doing math problems, providing organized oral explanations and adequate descriptions, expressing ideas in written form, learning new material, recalling and applying previously learned material, applying problem-solving skills in class discussions, carrying out multi-step instructions, working at a reasonable pace, finishing tasks on time, and introducing and maintaining relevant and appropriate

6

topics of conversation.  Mr. Harms noted that Mr. Wiszowaty "works very slowly" and is "very shy and quiet."  (AR 180, 181).

A child function report completed by Mr. Wiszowaty's mother on October 23, 2007, indicates a limitation in Mr. Wiszowaty's progress in understanding and using what he learned, including telling time, multiplying and dividing numbers over ten, understanding money, making correct change, and reading and understanding sentences in comics and cartoons.  The report also noted that Mr. Wiszowaty's impairments affect his social activities and behavior with other people, specifically in making new friends.

In an Activities of Daily Living Questionnaire that Mr. Wiszowaty appears to have completed himself, Mr. Wiszowaty noted that he is sometimes forgetful, that he has problems concentrating or thinking, and that his condition has affected bathing, hair care, or dressing.

In an adult function report completed on November 11, 2007, Mr. Wiszowaty's mother indicated that Mr. Wiszowaty needs reminders about all activities of daily living; he has very little concept of money and requires full assistance to shop; he needs assistance with written instructions; his disability affects his speaking, stair-climbing, and concentration; and he only spends his time with family, not others.

On December 19, 2007, Erwin J. Baukus, Ph.D. reported to the SSA his findings from an IQ test given to Mr. Wiszowaty.  He reported that Mr. Wiszowaty "persevered in the face of difficult items (for him) and completed all of the assigned items without significant incident."  (AR 311). Mr. Wiszowaty received a full scaled score of 79, with a verbal score of 80 and a performance score of 81.  *Id*.  Dr. Baukus reported that, on the mental status questionnaire, Mr. Wiszowaty made mistakes on what day of the week it was and the distance between his home to Bourbonnais.

On April 22, 2009, Larry Kravitz, Psy.D., the medical expert, completed a Medical Interrogatory-Mental Impairment(s)–Adult report.  He listed Mr. Wiszowaty's impairments as borderline intellectual functioning and a learning disorder.  Dr. Kravitz rated as "moderate" Mr. Wiszowaty's limitations in the areas of restriction of activities of daily living, difficulties in maintaining social function, and difficulties in maintaining concentration, persistence, or pace.  He identified no repeated episodes of decompensation.  Dr. Kravitz opined that, based on the available evidence, Mr. Wiszowaty "would be limited to understanding, remembering and carrying out simple and short instructions" and that he "should be able to manage brief and superficial co-worker and supervisor contact, with incidental public contact."  (AR 350).  Dr. Kravitz did not personally examine Mr. Wiszowaty.

### B.  Mr. Wiszowaty's Testimony

Mr. Wiszowaty testified that he was a high school senior and expected to graduate in May 2010.  He had worked part-time in his high school cafeteria, changing garbage bags, vacuuming hallways, and cleaning tables.  He was able to do all that was asked of him, and he enjoyed the work.  He testified that he could do more than one task at a time without help.  He testified that he was doing well in school, with above-average grades, and that he was in special education classes.  He testified that he got along very well with his teachers, got along well with his classmates, and did not have behavior problems at school.  At home, his chores included taking out the garbage, cleaning the gutters, and trimming hedges.  After he came home from school, he liked to sit back and watch "law shows" on television.  He testified that he understood the storyline of programs such as "Law and Order."  He testified that he has friends in school and also in the neighborhood.  Mr. Wiszowaty testified that he was not taking any medications, did not see a doctor, and had no physical problems.

### C.  Parents' Testimony

Robert J. Wiszowaty, Sr., Mr. Wiszowaty's father, testified that Mr. Wiszowaty stayed inside and watched television unless someone told him to go outside.  Mr. Wiszowaty needed to be reminded to shower, brush his teeth, and comb his hair.  His father testified that Mr. Wiszowaty does chores around the house but has to be supervised and that he could complete a task but has trouble if there are "two, three things in the event to get the project accomplished."  (AR 50).  He testified that Mr. Wiszowaty made Honor Roll in school and that he took regular classes during the summer and passed but that he struggled.

Pamela Norton, Mr. Wiszowaty's mother, testified that Mr. Wiszowaty never socialized with other children and has always been a loner.  She testified that, as a child, Mr. Wiszowaty did chores.  She testified that she was opposed to him obtaining a driver's license because he has a short attention span.  She does not think he could live on his own without assistance.  She testified that he does not socialize with people his age, except for his step-brothers.  When asked whether Mr. Wiszowaty went to the doctor, she responded that he was "very healthy," he was on no medications, and, although he has a regular doctor, he has "never really had any medical issues."  (AR 56).

### D.  Vocational Expert Testimony

At the administrative hearing, the ALJ posed this first hypothetical to the VE:  "I want you to assume an individual of the claimant's age, education and work experience, from the age of 18.  And I want you to assume that this person would be limited to unskilled, simple, routine, repetitive jobs that would be one and two steps."  (AR 57-58).  The VE responded to this hypothetical with three job titles:  dining room attendants (311.677), bartender helpers (312.687-018), and counter supply workers (311.677-010).  (AR 58).  The VE testified that, combined, there were 6334 jobs in

those categories.  The ALJ additionally asked the VE about a hypothetical person who would require sheltered work, to which the VE responded that no competitive employment would exist for such a person.  After questioning him, the ALJ asked the VE if his testimony is consistent with the Dictionary of Occupational Titles, to which the VE responded in the affirmative.

### E.  ALJ Discussion of Right to Representation

At the outset of the September 23, 2009 hearing, the ALJ informed Mr. Wiszowaty and his parents that he had a right to be represented.  The ALJ told him that an attorney can "assist you in preparing your case and presenting your case."  (AR 35).  She also explained that some organizations, such as Legal Aide, could handle his case without charge and that other representatives could handle it on a contingent fee basis, with payment of only $6,000 or 25 percent of back benefits, with the amount to be determined by the ALJ, and no charge if he was not awarded benefits.  The ALJ offered to postpone the hearing so that Mr. Wiszowaty could obtain representation.  However, Mr. Wiszowaty's father stated that they should "[j]ust move forward, because this has taken enough time already," and Mr. Wiszowaty agreed that the hearing should proceed.

### STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to [her] conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*,

11

362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187

F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a

"disability" as defined by the Social Security Act and regulations.[1]  The Act defines "disability" as

an inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A).  To be found disabled, the claimant's impairment must not only prevent him from

doing his previous work, but considering his age, education, and work experience, it must also

prevent him from engaging in any other type of substantial gainful activity that exists in significant

numbers in the economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f),

416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry

to evaluate whether the claimant is entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The steps are:  (1) Is the claimant engaged in substantial gainful activity?  If yes, the claimant is not

disabled, and the claim is denied; if no, the inquiry proceeds to Step 2; (2) Does the claimant have

an impairment or combination of impairments that are severe?  If not, the claimant is not disabled,

and the claim is denied; if yes, the inquiry proceeds to Step 3; (3) Do(es) the impairment(s) meet or

equal a listed impairment in the appendix to the regulations?  If yes, the claimant is automatically

considered disabled; if not, then the inquiry proceeds to Step 4; (4) Can the claimant do the

---

[1] Mr. Wiszowaty does not challenge the ALJ's findings with respect to his disability status prior to age eighteen.

claimant's past relevant work?  If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5; (5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience?  If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At Steps 4 and 5, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC").  "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations."  *Young*, 362 F.3d at 1000.  The ALJ must assess the RFC based on all the relevant evidence of record.  *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)).  The claimant bears the burden of proving Steps 1 through 4, whereas the burden at Step 5 is on the ALJ.  *Id*. at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

### ANALYSIS

Mr. Wiszowaty seeks remand of the ALJ's decision for the following reasons: (1) the ALJ did not obtain a valid waiver of the right to counsel from Mr. Wiszowaty; (2) the ALJ failed to fully and fairly develop the record; (3) the ALJ erred at Step 3 of the analysis by citing the wrong listing number and by failing to consider the whole record; (4) the ALJ's credibility determination violates Social Security Ruling 96-7p; and (5) the ALJ improperly evaluated Mr. Wiszowaty's residual functional capacity under Social Security Ruling 96-8p.  The Court considers each of the asserted grounds for remand in turn.

### A.  Waiver of Right to Counsel

Mr. Wiszowaty argues that the ALJ did not obtain a valid waiver of right to counsel from him at the hearing.  An SSI claimant has a statutory right to counsel at a disability hearing.

*Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991) (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1700; *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir. 1981)). However, the claimant can waive this right. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Thompson*, 933 F.2d at 584). To ensure that a waiver is valid, the ALJ "must explain to pro se claimants (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Id.* (internal quotation marks omitted) (quoting *Binion v. Shalala*, 13 F.3d 243, 244 (7th Cir. 1994); *Thompson*, 933 F.2d at 584). Moreover, "[w]hen there is a possibility that a claimant may be incompetent or have a mental illness, the ALJ should explain the right to counsel and the role of an attorney in the hearing in even greater detail and with greater attention toward ensuring that the claimant understands these issues." *Hawwat v. Heckler*, 608 F. Supp. 106, 108 (N.D. Ill. 1984) (citing *Smith v. Sec. of Health, Educ. & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)).

When an ALJ does not obtain a valid waiver of counsel, the ALJ has a heightened duty to develop the record. *Skinner*, 478 F.3d at 841 (citing *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994; *Thompson*, 933 F.2d at 585-86; *Smith*, 587 F.2d at 860). "While a claimant represented by counsel is presumed to have made his best case before the ALJ, no such presumption attaches to an unrepresented claimant." *Id.* at 842 (citing *Sears v. Bowen*, 840 F.2d 394, 402 (7th Cir. 1988)).

In this case, Mr. Wiszowaty agrees that the ALJ did explain the possibility of free counsel, contingency agreements, and the limitation on attorney fees. However, he argues that the ALJ did not adequately inform him of the ways in which an attorney can aid in the proceedings, the first requirement for obtaining a valid waiver. As to that element, the ALJ stated only that an attorney

14

can "assist you in preparing your case and presenting your case." (AR 35). Mr. Wiszowaty argues that, given his mental impairments, the ALJ did not give "great detail" as to the ways in which an attorney could help him and did not give "great attention toward ensuring that the claimant understands these issues." He suggests that the ALJ should have included more specific information such as that an attorney can question witnesses, including the vocational expert, elicit information from the claimant himself, obtain relevant medical evidence and opinions, and present legal arguments to the ALJ.

The Government responds that Mr. Wiszowaty's position is unreasonable because it is always possible to be more specific. However, if the Court of Appeals' admonition is to have any meaning, there must be a minimum threshold below which an ALJ has not fulfilled her duty to inform a claimant of the manner in which an attorney can assist the claimant during the hearing. The ALJ's statement in this case, in light of Mr. Wiszowaty's mental impairments, amounts to little more than merely stating "you have the right to be represented" and does not meet the minimal standard for an ALJ to inform a claimant with a mental impairment of how an attorney may aid the claimant at the hearing. *See Coleman v. Astrue*, 661 F. Supp. 2d 1016, 1023-24 (S.D. Ind. 2009) (reciting the numerous and specific examples given by the ALJ of how an attorney would be of assistance and finding that the ALJ "did inform the Plaintiff of the benefits of obtaining an attorney," but ultimately finding that the ALJ did not inform the plaintiff of the possibility of free counsel and that any fee would have to be approved).

However, remand as a result of this deficiency is only necessary if the ALJ did not develop a full and fair record. *See Ratulowski v. Astrue*, 380 F. App'x 552, 554 (7th Cir. 2010) (citing *Skinner*, 478 F.3d at 841-42; *Binion*, 13 F.3d at 245-46). "If the ALJ fails to obtain a valid waiver

15

of counsel, [her] duty to develop the record is heightened, and [she] must 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Million v. Astrue*, 260 F. App'x 918, 921 (7th Cir. 2008) (quoting *Skinner*, 478 F.3d at 841 (quoting *Smith*, 587 F.2d at 860)). "So as to give teeth to the requirement which we established in *Thompson* that the ALJ adequately explain the right to counsel, we now hold that if the ALJ does not obtain a valid waiver, the burden is on the Secretary to show the ALJ adequately developed the record. Without the shifting of this burden, no sanction would exist for an ALJ's inadequate explanation of a claimant's rights." *Binion*, 13 F.3d at 245. Nevertheless, "a 'significant omission' is usually required before we will find that the ALJ failed to fully develop the record." *Million*, 260 F. App'x at 921 (citing *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994)). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant remand." *Binion*, 13 F.3d at 246; *see also Million*, 260 F. App'x at 921 (finding that the Commissioner met the burden of showing that the ALJ satisfied its heightened duty to develop the record, noting that "at no point did [the claimant] indicate how the missing records might support her case or how she was prejudiced by their absence") (citing *Schoenfeld v. Apfel*, 237 F.3d 788, 798 (7th Cir. 2001)).

Mr. Wiszowaty cites numerous instances in which he believes the ALJ failed to fully and fairly develop the record. First, he argues that the ALJ's questioning of Mr. Wiszowaty and his parents was deficient. He argues that the ALJ's questioning of him was superficial because he answered only "yes" or "no" to many of her questions and because she repeatedly had to inform him not to simply repeat part of her question yet did not alter her questioning or probe him further to elicit more information. "[S]uperficial questioning of inarticulate claimants or claimants with limited education is likely to elicit responses which fail to portray accurately the extent of their

16

limitations." *Lashley v. Sec. of Health and Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983). Although the Court has reservations about the superficial and perfunctory nature of the questioning, Mr. Wiszowaty has not identified what other information could have been elicited or how the decision would have changed with different questioning.

Mr. Wiszowaty also argues that, in her questioning during the hearing, the ALJ failed to address several critical issues from Mr. Wiszowaty's record.  First, he contends that the ALJ did not elicit information from him or his parents regarding the diagnosis of a seizure disorder, which is the only record from a treating physician.  At the end of the hearing, the ALJ had a conversation with Mr. Wiszowaty's father regarding a doctor:  "And the doctor that you were looking for that you submitted.  It is in the file . . . .  But I got it.  I do remember seeing it, so, I don't want you to be concerned that I have not."  (AR 51).  If the ALJ was referring to the neurologist's report, it is unclear why she did not question Mr. Wiszowaty or his parents about the report at the hearing.  As a result, the record contains no explanation of the seizure disorder.  Although Mr. Wiszowaty is in the best position to explain how this lack of development might be prejudicial, he does not. Moreover, in this case, Mr. Wiszowaty is not on any medication and was not seeing any doctors; he testified that he had no physical problems; his mother also testified that he is "very healthy" and "never really had any medical issues."  Nevertheless, the failure to address this medical evidence of a seizure disorder for an individual with mental impairments is disconcerting.

Mr. Wiszowaty also argues that there is evidence in the record about a possible sexual behavior problem and that the ALJ failed to question either of his parents about the information. In the Request for Reconsideration, dated January 25, 2008, Mr. Wiszowaty's mother indicates that she disagrees with the disability determination because he receives "supervision most of the time"

17

and "[h]e can be left alone 1-2 hours but has sexual behaviors."  (AR 78).  In an unsigned and undated "Disability Report - Appeal - Form SSA -3441," the individual completing the form states that Mr. Wiszowaty "has sexual behaviors when left alone and is inappropriate . . .[;] even after being talked to about this issue he has still been inappropriate."  (AR 203).  Mr. Wiszowaty argues that this information may affect his ability to live independently or interact with others.  However, this omission by the ALJ is less troubling because Mr. Wiszowaty does not offer any analysis of how this undefined "behavior" that occurs only when he is isolated constitutes a functional limitation that would limit his ability to work, nor does he explain what additional information the ALJ would have learned had she pursued the issue at the hearing.  Other than his mother's reports, there is no other indication of such behaviors by teachers or other evaluators.

Finally, Mr. Wiszowaty argues that the ALJ erred in not probing him and his parents about a gap in his school history.  In the IEP forms from Crown Point High School, Mr. Wiszowaty's educational history indicates that, after withdrawing from Watseka High School in August 2008, he did not enroll at Crown Point High School until December 2008.  The ALJ did not inquire as to the reasons for his absence.  The Court notes that Mr. Wiszowaty, who is in the best position to do so, does not offer any explanation for his absences that would suggest limitations greater than those found by the ALJ.  Had Mr. Wiszowaty been represented, his attorney may have elicited information about this educational gap as well as the other issues identified above.

Because Mr. Wiszowaty was not represented by counsel, the ALJ had a duty to "scrupulously and conscientiously probe into, inquire of and explore for all of the relevant facts."  The burden is on the Commissioner to show the ALJ adequately developed the record.  The compounding of these omissions in combination with the superficial questioning of Mr. Wiszowaty

18

belies the ALJ's failure in this duty.  Given Mr. Wiszowaty's cognitive limitations, the ALJ should have inquired into these areas.  On remand, the ALJ is directed to inquire into these and any other undeveloped areas of the record.

### B. Listing of Impairments

As another basis for remand, Mr. Wiszowaty argues that the ALJ erred at Step 3 of the sequential analysis by citing the wrong listing number and failing to consider the whole record in making her decision.  As set forth above in the Disability Standard, "a claimant is eligible for benefits if [he] has an impairment that meets or equals an impairment found in the Listing of Impairments."  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P., App. 1).  "In considering whether a claimant's condition meets or equals a listed impairment, the ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing."  *Id*. (citing *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2002); *Scott v. Barnhart*, 297 F.3d 589, 595-96 (7th Cir. 2003); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).  A claimant has the burden of showing that his impairments meet a listing and that his impairments satisfy all of the various criteria specified in the listing; however, the ALJ also "should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require remand."  *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7thCir. 2006) (citing *Barnett*, 381 F.3d at 668; *Brindisi*, 315 F.3d at 786; *Scott*, 297 F.3d at 595).

At Step 2 of the analysis, the ALJ found that Mr. Wiszowaty has a learning disability and mild mental retardation, finding both to be "severe."  At Step 3 of the analysis, the ALJ made two findings regarding whether Mr. Wiszowaty meets or equals a listing.

19

First, at Paragraph 5 of her findings, the ALJ wrote: "At all times relevant to the decision, the claimant has not had an impairment or combination of impairments that meets, medically equals or functionally equals any of the impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (AR 19).  The ALJ then goes on to analyze whether Mr. Wiszowaty meets or medically equals the criteria of Listing 12.03, which is the listing for "schizophrenic, paranoid and other psychotic disorders."  It appears that the ALJ erred in the number of the listing because there is no evidence in the record to support an analysis under Listing 12.03.  It also appears that the ALJ's analysis following this finding in Paragraph 5 is in the context of his application for benefits as a child, which he is not pursuing on appeal.

The Introduction to Listing 12.00 for Mental Disorders explains that there are nine diagnostic categories.  Each of the nine listings, except for 12.05 and 12.09, consists of "a statement describing the disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations)."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.A.  For listings 12.02, 12.03, 12.04, and 12.06, there are "additional functional criteria (paragraph C criteria)."  *Id.*  Paragraph C criteria are assessed only if paragraph B criteria are not satisfied.  A person is found to have a listed impairment "if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied."  *Id.*  The structure of listings 12.05 (mental retardation) and 12.09 (substance addiction disorders) is different.  Listing 12.05, which is the more relevant of the two to this case, contains an introductory paragraph with the diagnostic description for mental retardation as well as four sets of criteria; if an impairment satisfies the diagnostic description as well as any one of the four sets of criteria, the impairment meets the listing.

20

It is difficult to determine which listing, other than the cited 12.03, the ALJ was analyzing because she first analyzed the "paragraph B" criteria (a claimant must have at least two of the criteria to be considered disabled under the listing), which are identical for several of the 12.00 listings, and which are:  (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked deficiencies of concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02, 12.03, 12.04, 12.06, 12.07, 12.08.

However, because the ALJ went on to analyze the "paragraph C" criteria, the ALJ must have been considering one of Listings 12.02 (organic mental disorders), 12.03 (schizophrenic, paranoid and other psychotic disorders), 12.04 (affective disorders), or 12.06 (anxiety related disorders).  The ALJ's conclusory "paragraph C" analysis provides in its entirety:  "In this case, the evidence fails to establish the presence of the 'paragraph C' criteria.  The record failed to establish that the claimant is unable to live outside of an unsupported[sic] living environment."  (AR 20).  Each of Listings 12.02, 12.03, and 12.04 contain a reference to an "inability to function outside a highly supportive living arrangement" in the "paragraph C" criteria, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02.C.3, 12.04.C.3, whereas Listing 12.06 references an "inability to function independently outside the area of one's home," *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.C.  Therefore, it is unclear which listing the ALJ was analyzing.

Later, in the decision, in the finding at Paragraph 9, the ALJ wrote: "Since attaining age 18, the record shows that the claimant has not had an impairment or combination of impairments that meets or medically equals a listed impairment (20 CFR 416.920(d))."  (AR 25).  In support of the finding, the ALJ offers one sentence of analysis: "The claimant's impairments do not meet or

21

medically equal any of the Category 12.00 mental impairments." *Id*. In this section, the ALJ offers no analysis of any of the listings under Category 12.00 or why the evidence of record does not support a finding that Mr. Wiszowaty meets or equals any of the listings.

In his motion, Mr. Wiszowaty argues that the ALJ erred by not specifically considering his severe impairments of learning disability and mild mental retardation under either Listing 12.02 for organic mental disorders or Listing 12.05 for mental retardation. The Court notes that the psychiatric review done after the initial filing for benefits used an analysis under Listing 12.02 for "organic mental disorders." For Listing 12.05 for "mental retardation," Mr. Wiszowaty concedes that his IQ scores appear to exceed the listing requirements. However, he argues that, because the ALJ found that he has a severe impairment of mild mental retardation, the ALJ was required to conduct an evaluation under Listing 12.05. The Court agrees. In Paragraph 9, the ALJ again failed to identify the specific listing or listings considered.

The ALJ also erred by not considering the entire record in making her determination that Mr. Wiszowaty failed to meet the requirements of a listing. In her analysis, the ALJ cites only a special education report from May 2, 2003, and a school record from Bradley Bourbonnais Community High School from November 10, 2006. The ALJ did not discuss more recent school reports and erred by not explaining why she disregarded them. Although the ALJ is not required to mention every piece of evidence in the record, a failure at Step 3 to evaluate evidence that supports a finding of disability does not provide a reviewing court assurance that the ALJ adequately considered the claimant's case. *Ribaudo*, 458 F.3d at 584. The omitted evidence appears favorable to Mr. Wiszowaty's application for benefits.

For example, the IEP completed in September 2007 listed Mr. Wiszowaty's primary disability as mental retardation. The ALJ did not acknowledge the SSA teacher questionnaire filled out by Mr. Harms, Mr. Wiszowaty's special education teacher, at the time of his application for benefits. This report, prepared when he was 18 years old, indicates that he was at a 3rd grade level in reading, math, and written language. Mr. Harms rated Mr. Wiszowaty with a "3," on a scale of 1-5, which indicates "an obvious problem," in the categories of reading and comprehending written material, comprehending and doing math problems, providing organized oral explanations and adequate descriptions, expressing ideas in written form, learning new material, recalling and applying previously learned material, applying problem-solving skills in class discussions, carrying out multi-step instructions, working at a reasonable pace, finishing tasks on time, and introducing and maintaining relevant and appropriate topics of conversation. Mr. Harms noted that Mr. Wiszowaty "works very slowly" and is "very shy and quiet." (AR 180, 181). The ALJ did not discuss how these ratings affected her analysis of the "paragraph B" criteria. This was an error.

Even if the ALJ had not erred in the paragraph B analysis, her paragraph C analysis, which is required if the paragraph B analysis is not found for Listings 12.02, 12.03, 12.04, and 12.06, is insufficient. For example, paragraph C of Listing 12.02, requires:

> C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02.C.[2]  As noted above, the entirety of the ALJ's "paragraph C" analysis is the statement:  "In this case, the evidence fails to establish the presence of the 'paragraph C' criteria.  The record failed to establish that the claimant is unable to live outside of an unsupported[sic] living environment."  (AR 20).  There is no analysis of the evidence relied on to support this finding.  Notably, the Commissioner offers no argument in support of the ALJ's "paragraph C" analysis.

This lack of analysis is troubling, first, because the ALJ relied on the opinion of Dr. Kravitz, yet Dr. Kravitz did not make any paragraph C findings and, second, because there is evidence of record that Mr. Wiszowaty was unable to function independently outside of a supportive living environment.  *See Herron v. Comm'r of Soc. Sec.*, 788 F. Supp. 2d 809, 817 (N.D. Ind. 2011).  Both of Mr. Wiszowaty's parents provided testimony supportive of his inability to live independently. Regarding his janitorial work, his father testified that "as long as he has somebody coaching him, he's fine."  (AR 39).  He also testified that "you have to remind him to take a shower and brush his teeth and comb his hair. And you know, you do have to remind him on almost a daily basis."  *Id*. He further testified that Mr. Wiszowaty will do chores "but you'll have to remind him.  You know, on- and coach him through it for the whole job" and that "multi-tasking he has an issue with."  (AR 47, 49, 51).

Similarly, Mr. Wiszowaty's mother testified that "he never socialized with other children. He was always a loner."  (AR 52).  She testified that he never received his driver's license because the "teacher's concern was . . . he couldn't keep his attention span long enough on the road," that "there would be concern of an accident or something because he's a mind drifter," and that "he can't

---

[2] Paragraph C of the other three listings is identical except that, in place of "organic mental disorder" in the opening sentence, the applicable disorder is named.

keep the same task going for certain periods of time." (AR 53-54). She expressed explicit concern with him living on his own, explaining that she hoped to get him into a program where he could live semi-independently but would have someone pay his bills and take him to the doctor and grocery store. The ALJ did not discuss the testimony of either parent in his Step 3 analysis.

The errors in the Step 3 analysis require remand for a more comprehensive discussion of the evidence by the ALJ. Although the ALJ may be able to articulate support by substantial evidence for her decision, the Court is unable to trace the path of her reasoning based on the absence of a logical bridge between the evidence and the decision in this instance.

### C. Credibility Determination

Mr. Wiszowaty argues that the ALJ failed to follow the requirements of Social Security Ruling 96-7p when making her credibility determination. Specifically, he argues that the ALJ improperly used boilerplate language when determining Mr. Wiszowaty's credibility and failed to consider the credibility of his parents, his only two witnesses.

The Social Security Regulations provide that, in making a disability determination, the ALJ will consider a claimant's statement about his symptoms, including pain, and how they affect the claimant's daily life and ability to work. *See* 20 C.F.R. § 416.929(a). However, subjective allegations of disabling symptoms alone cannot support a finding of disability. *See id*. The Regulations establish a two-part test for determining whether complaints of pain or other symptoms contribute to a finding of disability: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the symptoms alleged; and (2) once an ALJ has found an impairment that

25

reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. *Id.*

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)     The individual's daily activities;
(2)     Location, duration, frequency, and intensity of pain or other symptoms;
(3)     Precipitating and aggravating factors;
(4)     Type, dosage, effectiveness, and side effects of any medication;
(5)     Treatment, other than medication, for relief of pain or other symptoms;
(6)     Other measures taken to relieve pain or other symptoms;
(7)     Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

In making a credibility determination, Social Security Ruling 96-7p provides that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186, at *1 (Jul. 2, 1996). The Ruling provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p, at *6; *see also* 20 C.F.R. § 416.929(c)(2). An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). The ALJ's credibility determination, overall, must construct a "logical bridge" from the evidence to the conclusion. *See Myles v. Astrue*, 582 F.3d 672, 674 (7th Cir. 2009); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

First, Mr. Wiszowaty argues that the ALJ improperly used boilerplate language in determining his credibility.  In this case, the ALJ makes two statements regarding Mr. Wiszowaty's credibility.  First she states, in the context of her RFC analysis: "In making this finding, I have considered the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms and found them not entirely credible for the reasons set forth above." (AR 25).  She later states: "I find that the claimant's medically determinable mental impairments could reasonably be expected to cause the alleged limitations; however, the claimant's statements concerning the intensity, persistence and limiting effects of the symptoms are not credible to the extent they are inconsistent with the assessed residual functional capacity herein."  (AR 26).

The Seventh Circuit has held that credibility statements such as the ones used here are "precisely the kind of conclusory determination that SSR 96-7p prohibits."  *Brindisi*, 315 F.3d at 787-78 (noting that such statements "turn the credibility process on its head by finding statements that support the ruling credible and rejecting those statements that do not, rather than evaluating [the claimant's] credibility as an initial matter in order to come to a decision on the merits"); *see also Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011); *Phillips v. Astrue*, 413 F. App'x 878, 886-87 (7th Cir. 2010); *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010) (labeling almost identical language as "meaningless boilerplate" that "yields no clue to what weight the trier of fact gave the testimony"); *Murphy v. Astrue*, 496 F.3d 630, 635 (7th Cir. 2007).

In this case, the ALJ's boilerplate language makes reference to a credibility analysis that does not exist in the opinion.  The ALJ erred in not explaining why she found Mr. Wiszowaty's testimony not credible because, at the same time, she relied on his statements in other parts of her opinion.  For example, at the hearing, Mr. Wiszowaty's parents both testified that he did not have

27

friends; in contrast, Mr. Wiszowaty testified that he had friends at school and in the neighborhood. The ALJ determined that Mr. Wiszowaty did have friends in the neighborhood and at school. Although the ALJ appears to find him credible in that specific instance, her opinion otherwise denies him credibility with no explanation.  The Commissioner does not respond to this argument and offers no opposition to remand on this issue under the applicable law.

Second, Mr. Wiszowaty argues that the ALJ erred in not making a credibility determination for Mr. Wiszowaty's parents when the ALJ appears to have discredited their testimony.  At no point in her analysis does the ALJ discuss Mr. Wiszowaty's parents' testimony that is supportive of his claim of disability.  Yet, she offers no explanation as to why and makes no credibility finding as to their testimony.  As noted above, SSR 96-7p requires that, in making a credibility determination as to the claimant, the ALJ must consider the entire record, including statements by "other persons about the symptoms and how they affect the individual."  SSR 96-7p.  In this case, it is unclear whether the ALJ considered the entire record because she only includes the parents' statements that support her finding of not-disabled.

In at least one instance, the ALJ incorrectly attributes a statement to Mr. Wiszowaty's mother.  The ALJ states that "[t]he claimant's mother testified that the claimant had no problems dressing himself and could brush his teeth."  (AR 24).  However, there is no such statement by his mother in the transcript of the hearing.  His father did not testify to those facts either.  Mr. Wiszowaty testified that he is capable of dressing himself, combing his hair, and brushing his teeth. (AR 42).  In contrast, his father testified that "you have to remind him to take a shower and brush his teeth and comb his hair.  And you know, you do have to remind him on almost a daily basis." (AR 47).  By not discussing the testimony of the parents supportive of Mr. Wiszowaty's claim, the

28

ALJ failed to resolve inconsistencies between his testimony and their testimony.  Thus, it is unclear what weight she gave to the witness' statements.  *See Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 488-89 (7th Cir. 2007) (holding that the ALJ either had to find the mother's testimony not credible, explaining why, or, find the testimony credible, and explain why, based on that testimony, the claimant was not disabled).

Notably, the Commissioner offers no response to this argument other than to assert: "While the ALJ's credibility analysis was brief, however, the ALJ's ultimate RFC finding was not inconsistent with the testimony of the Plaintiff and his parents."  Def. Resp., p. 11.  However, as discussed more fully in the next section, it appears that the ALJ's RFC finding is inconsistent with the testimony of Mr. Wiszowaty's parents to the extent that the ALJ did not account for Mr. Wiszowaty's limitations in concentration, persistence, and pace.  Thus, the failure to discuss the favorable testimony of the parents or else to explain why she did not find them credible was an error.

Based on the foregoing, the Court remands this case for a proper credibility finding.

### D.  Residual Functional Capacity

"Residual functional capacity" ("RFC") is a measure of what an individual can do despite the limitations imposed by his impairments.  20 C.F.R. § 416.945(a).  "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996).  This includes the claimant's "medical history; . . . reports of daily activities; lay evidence; recorded observations; medical source statements; and effects of symptoms including pain, that are reasonably attributed to a medically determinable impairment . . . ."  *Id*. at *5.  The determination of a claimant's RFC is a legal decision rather than a medical one.  20 C.F.R. § 416.927(e)(2); *Diaz v. Chater*, 55 F.3d 300,

306 n.2 (7th Cir. 1995). The RFC is an issue at Steps 4 and 5 of the sequential evaluation process. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996).

The ALJ found that, since the age of 18, Mr. Wiszowaty "has had the residual functional capacity to perform a full range of work at all exertional levels. He has the mental residual functional capacity to perform unskilled work which involves only simple, repetitive, routine tasks; with one- to two-step instructions." (AR 25). Mr. Wiszowaty argues that the ALJ improperly assessed his RFC by incorrectly citing the medical expert's opinion, by failing to address Mr. Wiszowaty's limits in social functioning, and by not considering Mr. Wiszowaty's limits in concentration, persistence, and pace when finding him capable of unskilled, simple work. The Court considers each in turn.

### 1. Medical expert opinion

The ALJ stated that Dr. Larry Kravitz, the medical expert, assessed Mr. Wiszowaty "to have *mild to moderate* limitations in the areas of daily living activities; maintaining social functioning; and maintaining concentration, persistence and pace." (AR 25) (emphasis added). However, in the "Medical Interrogatory-Mental Impairment(s)-Adult," dated April 22, 2009, Dr. Kravitz indicated "moderate" limitations in each of these three areas based on the identified impairments of borderline intellectual functioning and learning disability. (AR 347).[3] Mr. Wiszowaty argues that this error alone warrants remand, reasoning that the mistake makes a reviewing court's duty to analyze the ALJ's decision-making process even more difficult. A court should remand when "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet*, 78 F.3d at 307. Although the Court is concerned by the mischaracterization of Dr.

---

[3] In contrast, the ALJ correctly identified the ratings from the "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" by Dr. Kravitz, also dated April 22, 2009.

Kravitz's opinion, Mr. Wiszowaty has not argued how the error affected the ALJ's decision, or how a proper recitation of the ratings as "moderate" alone in each category would have changed his decision.   Nevertheless, because it appears that these ratings may have impacted the ALJ's assessment of Mr. Wiszowaty's credibility as well as the RFC determination, on remand, the Court directs the ALJ to correctly cite Dr. Kravitz's findings and, if appropriate, properly explain how these findings impact his assessment of Mr. Wiszowaty's credibility and the RFC determination.

*2.  Limits in social functioning*

In the "Medical Interrogatory-Mental Impairment(s)-Adult," Dr. Kravitz wrote that Mr. Wiszowaty could "manage brief and superficial coworker and supervisor contact, with incidental public contact."  (AR 350).  The ALJ did not cite this language.  However, she did identify Dr. Kravitz's rating of "moderate" limitations in the ability to interact appropriately with the public and supervisors from the "Medical Source Statement of Ability to Do Work-Related Activities (Mental)."  (The ALJ incorrectly identified Dr. Kravitz as giving a rating of "moderate" limitation in the ability to interact appropriately with co-workers, for which Dr. Kravitz in fact assigned a rating of "mild" limitation.)

Despite acknowledging these moderate limitations, the ALJ did not include any limitations in social functioning nor did the ALJ explain why no such limitations were included in the RFC notwithstanding this evidence.  The Regulations explain that, "[a] limited ability to carry out certain mental activities, such as limitations . . . in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work."  20 C.F.R. § 404.1545(c).  The ALJ failed to reconcile her concurrence with Dr. Kravitz's opinion with her omission of any limitations on social functioning.  Moreover, it appears that all three jobs

31

identified by the VE–dining room attendant, bartender's helper, and counter supply worker– could require more than incidental public contact.  On remand, the ALJ must address Mr. Wiszowaty's social limitations in the context of the RFC and, if the ALJ again does not include any social limitations in the RFC, she must explain why in light of Dr. Kravitz's opinions.  *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010).

*3.  Limits in concentration, persistence, and pace*

In the RFC, the ALJ found that Mr. Wiszowaty has the "mental residual functional capacity to perform unskilled work which involves only simple, repetitive, routine tasks; with one-to two-step instructions."  (AR 25).  Mr. Wiszowaty argues that, in making this finding, the ALJ did not account for his limitations in concentration, persistence, and pace.  The Seventh Circuit has held that moderate limitations in concentration, persistence, and pace are not adequately considered in an RFC that limits a claimant to simple, unskilled work.  *O'Connor*, 627 F.3d at 620-21 ("In most cases . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace.").  In addition, limiting a hypothetical to simple, routine, and unskilled work does not account for difficulties with concentration, persistence, and pace.  *Id.* (citing *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003)).

Dr. Kravitz, the medical expert, found moderate limitations in this area, and Mr. Wiszowaty's teacher noted his problem with pace.  Mr. Wiszowaty's parents testified to his inability to stay on task.  Mr. Wiszowaty's father testified that Mr. Wiszowaty will sit in front of the

television "24/7" if he is allowed to. He has to be reminded to shower, brush his teeth, and comb his hair almost daily. He testified that Mr. Wiszowaty cannot simply be told how to do a chore and then be expected to do it independently; instead, someone must coach him through the whole job. He testified that Mr. Wiszowaty can only complete a task that requires two or three steps if someone goes back over the steps with him. Mr. Wiszowaty's father also believes that Mr. Wiszowaty needs vocational training. Ms. Wiszowaty's mother testified that Mr. Wiszowaty never got his driver's license because the teacher was concerned that his attention span would not allow him to keep his attention on the road. She testified that he cannot keep on the same task for a long period of time. She also testified that he could not go to a grocery store on his own if he lived by himself. The ALJ did not discuss this evidence in the context of limitations on concentration, persistence, and pace in the RFC analysis. On remand, the ALJ will have an opportunity to do so.

### E. Vocational Expert Testimony

*1. Inconsistencies*

M. Wiszowaty argues that the ALJ failed to resolve inconsistencies between the Dictionary of Occupational Titles ("DOT") and the testimony of the VE. Under SSR 00-4p, an ALJ has an "affirmative responsibility" to ask whether a vocational expert's testimony conflicts with the DOT. SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000); *Overman v. Astrue*, 546 F.3d 456, 462-63 (7th Cir. 2008); *Prochaska*, 454 F.3d at 735. In this case, the ALJ fulfilled this duty by asking the question, to which the VE responded positively. However, if the VE's testimony "appears to conflict with the DOT," an ALJ must elicit "a reasonable explanation for the apparent conflict." SSR 00-4p, 2000 WL 1898704, at *4. Mr. Wiszowaty argues that the ALJ failed to resolve marked

inconsistencies between the VE's testimony and the DOT and that the ALJ had a heightened duty to explore for all probative facts because he was unrepresented at the hearing.

The first hypothetical posed by the ALJ asked the VE to assume limitations to unskilled work involving only simple, routine, and repetitive tasks with one- to two-step instructions. The VE responded with three job titles: dining room attendants (DOT #311.677-010 and 311.677-018), bartender helpers (DOT # 311.677-018), and counter supply workers (DOT #319.687-010). The DOT assigns each job a General Educational Development ("GED") score, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." Dep't of Labor, Dictionary of Occupational Titles, App'x C(III). The GED scale is composed of three divisions–reasoning development, mathematical development, and language development. *Id.* Reasoning Development Level 1 provides: "Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* Reasoning Development Level 2 provides: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id.*

In *Terry v. Astrue*, the Seventh Circuit Court of Appeals found that the record in that case supported the plaintiff's ability to perform jobs with a GED Reasoning Development Level 3 because the plaintiff had finished high school, had completed training to become a certified nurse's assistant, and had the cognitive capacity to follow "simple instructions." 580 F.3d 471, 478 (7th Cir. 2009) (citing *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007)) (noting that in *Renfrow*, the court found that a job requiring level three reasoning was not inconsistent with the claimant's ability

to follow only "simple, concrete instructions").  Other district courts in this circuit have analyzed the relationship between "simple, unskilled work" and Reasoning Development Level 2 and have found them not to be inconsistent.  *Thompkins v. Astrue*, No. 09 C 1339, 2010 WL 5071193, *10-11 (N.D. Ill. Dec. 6, 2010) (citing and discussing *Simms v. Astrue*, 599 F. Supp. 2d 988, 1007-08 (N.D. Ind. 2009); *Masek v. Astrue*, No. 08 C 1277, 2010 WL 1050293, at *22 (N.D. Ill. Mar. 22, 2010); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005); *Money v. Barnhart*, 91 F. App'x 210, 214 (3d Cir. 2004); *Flaherty v. Halter*, 182 F. Supp. 2d 824, 850-51 (D. Minn. 2001)); *see also Mattison v. Astrue*, No. 09-C-60, 2010 WL 446051, at *3 (E.D. Wis. Feb. 2, 2010) (recognizing the holding in *Terry* and positing that, "under *Terry*, it may be that a limitation to 'simple, routine' work is not inconsistent with reasoning level two."); *but see Sawyer v. Astrue*, No. 10 C 8019, 2011 WL 60101954, at *20 (N.D. Ill. Dec. 6, 2011) (distinguishing the holding in *Terry* regarding Reasoning Level 3 positions not being inconsistent with a limitation to "simple, unskilled work").

However, in this case, the ALJ did not limit Mr. Wiszowaty only to "simple, unskilled work" that is repetitive and routine but also to work with only one- to two- step tasks.  *See Coleman v. Astrue*, No. CV 10-5641, 2011 WL 781930, *5-6 (C.D. Cal. Feb. 28, 2011) (recognizing a distinction between "simple, repetitive tasks or unskilled work" and "one-to-two-step jobs").  This limitation was included in both the RFC and in the hypothetical to the VE.  As noted above, Reasoning Development Level 1 expects the claimant to be able to "[a]pply commonsense understanding to carry out simple one- or two-step instructions."  Each of the three job titles identified by the VE require a Reasoning Development Level 2, which includes the ability to carry out detailed instructions.

35

Although the Seventh Circuit has not addressed the issue, several courts, including this Court recently, have concluded that a limitation to one- to two-step tasks is consistent with GED Reasoning Development Level 1.  In this case, the Court again agrees as the language of the RFC limitation mirrors the language of Level 1.  *See, e.g., Pomilia v. Astrue*, No. 2:11-CV-15-PRC, 2012 WL 691628, at *18-19 (N.D. Ind. Mar. 2, 2012) (J. Cherry); *Rodriguez v. Comm'r of Soc. Sec.*, No. 3:11-CV-398, 2012 WL 380275, *12-13  (N.D. Ohio Feb. 6, 2012) (finding that the ALJ failed to explain the contradiction between finding the claimant could perform jobs categorized as Reasoning Development Level 2 or 3 when the doctor to whom the ALJ had given substantial weight essentially limited the claimant to Reasoning Development Level 1 jobs because the doctor opined that the claimant was "markedly limited in his ability to understand and remember detailed instructions and his ability to carry out detailed instructions"); *Xai Lor v. Astrue*, No. 1:10-CV-01382, 2011 WL 3847153, *7 (E.D. Cal. Aug. 30, 2011) ("Notably, though a one to two-step instruction limitation would confine a worker to reasoning Level 1, a limitation to simple, repetitive work encompasses both Reasoning Levels 1 and 2."); *Grigsby v. Astrue*, No. EDCV 08-1413, 2010 WL 309013, *2 (C.D. Cal. Jan. 22, 2010) (finding the limitation to "simple repetitive tasks involving two steps of instruction . . . corresponds to the DOT definition of Level 1 reasoning"); *Segura v. Barnhart*, 148 F. App'x 707, 710-11, 2005 WL 2203237, *3 (10th Cir. 2005) (finding that the ALJ, who had limited the claimant to performing jobs requiring only the mental ability to understand, remember, and carry out one and two-step work instructions in jobs that are routine and repetitive in nature, had accounted for the mental limitations by finding that the claimant was limited to the first level of GED ratings); *see also Pharris v. Astrue*, No. 1:10-CV-01323, 2011 WL 3882508, *12 (E.D.Cal. Sept. 2, 2011) ("A limitation to three and four step instructions is consistent with jobs

36

requiring Reasoning Level 2."); *But see George v. Astrue,* No. 10-00113-B, 2011 WL 4550131, *5 (S.D. Ala. Sept. 30, 2011) ("In this case, Plaintiff has failed to establish a conflict with respect to the reasoning levels because the children's attendant position has a reasoning level of 2, which is consistent with carrying out simple, one and two step tasks and instructions.").

The question then becomes whether the ALJ should have recognized the conflict between the testimony and the DOT at the hearing on the record in this case. The ALJ and the VE did not discuss the GED reasoning level for the three jobs, nor was there any specific discussion regarding whether the limitation to one- to two-step jobs was consistent with the identified DOT titles. The Seventh Circuit has held that an ALJ may rely on imperfect VE testimony if a claimant does not question the basis for the testimony at the time of the hearing. *Overman*, 546 F.3d at 464-65 (citing *Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004)). In this case, Mr. Wiszowaty was not represented by counsel and could not personally be expected to question the VE on this issue. Although it is not so obvious that the three jobs would have a GED Reasoning Development Level of 2 that an ALJ would immediately recognize the conflict, given Mr. Wiszowaty's unrepresented status, the ALJ should have inquired further into the requirements of the positions given the limitation to one- to two-step tasks. In light of the apparent conflict between Mr. Wiszowaty's RFC and the DOT requirements for the jobs identified by the VE, the ALJ is instructed to ask the VE about the conflict, if applicable, on remand.

2. *Second Hypothetical*

The ALJ posed a second hypothetical to the VE, based on additional limitations not included in the RFC. Mr. Wiszowaty argues that the ALJ erred by not including in her decision the second hypothetical on the ground that the VE's testimony regarding the second hypothetical is favorable

evidence.  However, an ALJ is only required to pose a hypothetical question that contains all of the limitations that the ALJ has accepted as true.  *See Ehrhart v. Sec. of Health & Human Servs.*, 969 F. 2d 534, 540 (7th Cir. 1992).  Mr. Wiszowaty cites no law requiring an ALJ to discuss vocational expert testimony regarding a hypothetical containing limitations not adopted by the ALJ.  Moreover, Mr. Wiszowaty offers no evidence or argument that he is actually limited to working in a sheltered workshop, which was the additional limitation imposed in the second hypothetical.  Remand on this issue is not warranted.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Memorandum in Support of His Motion for Summary Judgment [DE 21] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 21st day of March, 2012.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record

38